UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Nicholas M. Auricchio,**

                                   **Plaintiff,**

                    **-v-**                            **5:12-CV-751 (NAM/ATB)**

**David Giocondo, individually and in his official capacity
as Campus Peace Officer for the Department of Public
Safety of Syracuse University,**

                                   **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Office of Michael Auricchio
Michael J. Auricchio, Esq., of counsel
144 Miles Avenue
Syracuse, New York 13210
Attorney for Plaintiff

Bond, Schoeneck & King, PLLC
Stephanie M. Campbell, Esq., of counsel
Thomas R. Smith, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202
Attorney for Defendant

**Hon. Norman A. Mordue, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In this action pursuant to 42 U.S.C. § 1983, plaintiff claims that his Fourth Amendment protection against unreasonable searches and seizures was violated when defendant, a campus peace officer with the Syracuse University Department of Public Safety ("SUDPS"), stopped plaintiff's vehicle and frisked him. Defendant moves (Dkt. No. 11) pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint (Dkt. No. 10). The Court denies the motion.

## AMENDED COMPLAINT

The amended complaint (Dkt. No. 10) alleges that at around 2:50 in the afternoon of May 3, 2009, plaintiff was driving around Walnut Park in the Syracuse University area "preach[ing] his religious message from his vehicle." Plaintiff alleges that the Onondaga County Department of Emergency Communications received two 911 calls regarding plaintiff's conduct. The first call, from a private citizen at Walnut Park, was made at made at 3:05 p.m. The second call, also from a private citizen, was made at 3:18 p.m. The second caller correctly gave plaintiff's vehicle and license number and complained that plaintiff was "driving in circles around the neighborhood" and "yelling out the window." Plaintiff claims that the first call was not reported to SUDPS or SPD, and that the second call was not reported to SUDPS, although two SPD police units were dispatched. Therefore, according to the amended complaint, defendant was not aware of either of the two 911 call reports when he stopped plaintiff.

Plaintiff further claims that at approximately 3:15 p.m., he stopped his vehicle at a red light in the Syracuse University area, and was preaching out his window, when he noticed a SUDPS (referred to in amended complaint as "DPS") vehicle behind him. The amended complaint alleges:

> 40. When the DPS peace officer in that vehicle heard Auricchio's Christian preaching (i.e., only while stopped at the aforementioned red light and not while driving), he let Auricchio pass him and then followed him, eventually turning on his emergency lights, it is believed, after passing intersecting Harrison Street within the City of Syracuse.
>
> 41. Once the DPS peace officer crossed intersecting Harrison Street while driving North on Ostrum Avenue and then onto Madison Street, he legally (pursuant to CPL, article 3, section 2.10, subdivision 77 and the derivative MOU between SPD and DPS), ceased to be a DPS peace officer and was only considered a DPS private security guard with absolutely no law enforcement authority.

42. While continuing to drive on Ostrum Avenue and after passing intersecting Harrison Street, Auricchio began to slow his vehicle down so he could pull over on the side of the road; however, the DPS private security guard, using his loud speaker (upon information and belief), requested that Auricchio take a right on Madison Street and that he should then stop and park his vehicle on that same street.

43. According to DPS' "Detail Call For Service Report ("DPS Service Report"), dated May 3, 2009, Unit 9715C, assigned to Officer Giocondo, stopped Auricchio at 15:29:32 at 1100 Madison Street.

44. A review of the 911 Second Intake Report for May 3, 2009, reveals SPD Unit 672C, assigned to Officer Kenn Burdick ("Officer Burdick") and another unidentified SPD officer (Employee Number 101431), arrived at the scene on Madison Street at 15:30:42; over one minute after Officer Giocondo had stopped Auricchio on the same street.

45. Officer Giocondo, therefore, on May 3, 2009, stopped Auricchio at 1100 Madison Street before any SPD officers had arrived at that incident.

46. When Auricchio stopped and began to exit his vehicle, Officer Giocondo, now legally only a DPS private security guard, demanded that Auricchio not exit his vehicle.

47. Auricchio disobeyed Officer Giocondo's order not to exit his vehicle.

48. Auricchio was absolutely in his legal right to disobey Officer Giocondo, since he was only, legally, a DPS private security guard and private citizen with absolutely no law enforcement authority.

49. Auricchio asserts that he disobeyed Officer Giocondo['s] command not to exit his vehicle because he believed this DPS officer had no authority to stop his vehicle since he appeared to be only a Syracuse University private security guard.

50. When Officer Giocondo angrily approached, while Auricchio was peacefully standing in front of his vehicle, he told Officer Giocondo he had no right to stop him and that he was violating his right to freedom of religion based on his Christian preaching, as he knew that Auricchio had been preaching from his vehicle at the red light on Ostrum Avenue.

51. Auricchio states that in response to hearing this above assertion, Officer Giocondo swore at his Christian religion and then stated that he had been

pulled over based on an alleged complaint about his allegedly swearing out his window while he was driving.

52. However, a review of the 911 First and Second Intake Call Reports and the DPS Service Report indicate that Officer Giocondo unilaterally initiated the pursuit, stop and frisk of Auricchio without having been first dispatched by 911 or DPS.

53. In this respect, the May 3, 2009 DPS Detail Service Report indicates the pursuit of Auricchio was "Officer Initiated," apparently at some time prior to 15:29:32, by Primary Unit 9715c, assigned to Officer Giocondo.

54. Officer Giocondo then told Auricchio he had some form of law enforcement authority that allowed him to follow and stop Auricchio.

55. Officer Giocondo then angrily demanded that Auricchio place his hands on the front of his vehicle and proceeded to pat him down.

56. SPD's Police Report, dated May 3, 2009, clearly verifies this stop and frisk incident by Officer Giocondo, a DPS private security guard and private citizen at that point, indicating the vehicle stop of Auricchio occurred at 1100 Madison Street and stating in the "Narrative" Section that "driver was stopped by DPS and exited vehicle, was frisked for weapons ..."

57. Officr Giocondo also told Auricchio he was civilly disobedient for not obeying him.

58. Auricchio was not civilly disobedient when he disobeyed the unlawful order of Officer Giocondo, a DPS private security guard, to not exit his vehicle on Madison Street on May 3, 2009.

59. When finished with this unlawful and unconstitutional stop and frisk, Officer Giocondo angrily told him to get back in his vehicle and not to get out.

60. In their official capacity, DPS peace officers enforce the laws and ordinances pertaining to the City of Syracuse through the New York State Criminal Procedure Law (CPL), article 3, section 2.10, subdivision 77 and a derivative Memorandum of Understanding ("MOU") between SPD and DPS; delegating to DPS peace officers limited municipal law enforcement authority on specific public streets and sidewalks around the Syracuse University area.

Plaintiff contends that, when outside the statutorily prescribed jurisdictional boundary for exercising their law enforcement authority, as described in CPL 2.10(77)(b) and the Memo of

-4-

Understanding between SPD and SUDPS, "DPS peace officers, including [defendant] Officer Giocondo, are legally considered only DPS private security guards and private citizens with absolutely no law enforcement authority." [1]  Plaintiff adds that 1100 Madison Street, where plaintiff was stopped and frisked, was not within "the statutorily prescribed jurisdictional boundary" of defendant's authority.

The single cause of action under 42 U.S.C. § 1983 claims that defendant violated plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.  Plaintiff claims:

> 93. In committing the acts complained of herein, Defendant Giocondo, while acting under the color of state law, pursuant to CPL, art. 3, sect. 2.10, subd. 77(b) and as effected through MOU, ¶ 13(a) - (b), (i) and (k)), violated Plaintiff Auricchio's right to be free from unreasonable searches and seizures by stopping and frisking him without having any lawful reasonable suspicion since he was, legally, only considered a DPS private security guard and private citizen, under the Fourth and Fourteenth Amendments of the U.S. Constitution. See 42 U.S.C. § 1983.
>
> 94. Defendant Giocondo, when he unlawfully, pursuant to CPL, art. 3, sect.

---

[1] CPL § 2.10(77)(b) provides:
> [T]he chief law enforcement officer of the city of Syracuse may appoint and remove, following consultations with Syracuse University, such number of Syracuse University peace officers as is determined by the chief law enforcement officer of the city of Syracuse to be necessary for the maintenance of public order at such university[.] ... <u>Such Syracuse University peace officers shall have the powers of peace officers within the geographical area of employment of the grounds or premises owned, controlled or administrated by Syracuse University</u> within the county of Onondaga, except in those situations when requested by the chief law enforcement officer of the city of Syracuse or his or her designee, including by means of written protocols agreed to by the chief law enforcement officer of the city of Syracuse and Syracuse University, to provide assistance on any public highway which crosses or adjoins such grounds or premises.

(Emphasis added.)

The Memo of Understanding states in paragraph 13: "Except as expressly set forth in this MOU, DPS members may exercise law enforcement authority only while actually on duty and only while acting within the scope of their employment with DPS and only within the [specified] geographical areas[.]"

2.10, subd. 77(b) and MOU, ¶ 13(a) - (b), (i) and (k)), stopped and frisked Plaintiff Auricchio, actions considered to be exclusively the function of the state, while appearing to act under the color of state law as a DPS campus peace officer when he was legally only considered a DPS private security guard and private citizen, during the May 3, 2009 incident on Madison Street, violated the right of Auricchio to be free from unreasonable searches and seizures, under the Fourth and Fourteenth Amendments of the U.S. Constitution. See 42 U.S.C. § 1983.

95. Defendant has no legitimate reason for having violated Plaintiff Auricchio's right to be free from unreasonable searches and seizures during the incident on Madison Street on May 3, 2009.

96. Defendant's unlawful application and enforcement of CPL, art. 3, sect. 2.10, subd. 77(b), while engaging in police functions reserved exclusively to the state while legally being only considered a DPS private security guard and private citizen, thus violated the unreasonable searches and seizures clause of the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. See also 42 U.S.C. § 1983.

**THE MOTION**

To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *See ATSI*, 493 F.3d at 98. In addition to the complaint, the Court may also consider exhibits, documents incorporated by reference, and documents that are integral to plaintiff's claims. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991).

Plaintiff brings this action pursuant to 42 U.S.C. 1983 ("section 1983"). Section 1983

allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights; rather, it merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). In the instant case, the amended complaint adequately pleads that defendant was acting under color of law. The sole federal right upon which plaintiff relies is his Fourth Amendment right to be free from unreasonable search and seizure.

The Fourth Amendment protects the "right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. In the context of vehicle stops, "the Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Harrison*, 606 F.3d 42, 45 (2d Cir. 2010) (citation and internal quotation marks omitted). Once a lawful traffic stop is made, the Fourth Amendment protects against warrantless searches of the person; the officer may, however, make a reasonable search for weapons if, during the course of a lawful investigatory detention, the officer reasonably believes that the detained person might be armed and dangerous. *See Holeman v. City of New London*, 425 F.3d 184, 191 (2d Cir. 2005).

Plaintiff's claim is based primarily on his view that, when outside the statutorily prescribed jurisdictional boundary for exercising their law enforcement authority, as described in CPL 2.10(77)(b) and the Memo of Understanding between SPD and SUDPS, "DPS peace officers, including [defendant] Officer Giocondo, are legally considered only DPS private

security guards and private citizens with absolutely no law enforcement authority." Plaintiff asserts that 1100 Madison Street, where plaintiff was stopped and frisked, was not within "the statutorily prescribed jurisdictional boundary" of defendant's authority. Therefore, plaintiff reasons, when defendant stopped and frisked plaintiff, he was acting without the law enforcement authority of a SUDPS peace officer, thus infringing plaintiff's Fourth Amendment rights. Plaintiff also claims generally that the stop and frisk were unreasonable under the Fourth Amendment.

In moving to dismiss, defendant argues that, even if state law did not permit him to exercise law enforcement authority as a SUDPS peace officer at the location where he stopped and frisked plaintiff, such violation of state law does not give rise to a federal constitutional violation. Defendant further contends that his conduct in stopping and frisking plaintiff was reasonable under the Fourth Amendment as a matter of law, and that therefore plaintiff fails to state a claim under section 1983, regardless of any violation of state law. As briefly explained below, the Court denies the motion.

## DISCUSSION

The Supreme Court makes clear that "it is not the province of the Fourth Amendment to enforce state law." *Virginia v. Moore*, 553 U.S. 164, 178 (2008). Whether or not a search or seizure is reasonable under the Fourth Amendment does not depend on the law of the particular State in which the search or seizure occurs. *Id*. at 172-73 (citing *California v. Greenwood*, 486 U.S. 35, 43 (1988); *Whren v. United States*, 517 U.S. 806, 815 (1996)). Rather, as the *Moore* court explains, in evaluating whether a search or seizure is reasonable under the Fourth Amendment, "we have analyzed a search or seizure in light of traditional standards of

reasonableness 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Moore*, 553 U.S. at 171. The *Whren* court explains:

> It is of course true that in principle every Fourth Amendment case, since it turns upon a "reasonableness" determination, involves a balancing of all relevant factors. With rare exceptions not applicable here, however, the result of that balancing is not in doubt where the search or seizure is based upon probable cause.\*\*\*
>
> Where probable cause has existed, the only cases in which we have found it necessary actually to perform the "balancing" analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests – such as, for example, seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body.

*Whren*, 517 U.S. at 817-18 (citations omitted). In *Whren*, the court upheld a vehicle stop based on probable cause, although the stop violated local regulations limiting the authority of plainclothes officers in unmarked vehicles to enforce traffic laws. The *Whren* court commented that "the making of a traffic stop out of uniform does not remotely qualify as ... an extreme practice." *Id*. at 818. As the Second Circuit states: "Read together, *Moore* and *Whren* stand for the proposition that the Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and that the violation of such restrictions will not generally affect the constitutionality of a seizure supported by probable cause." *United States v. Wilson*, 699 F.3d 235, 243 (2d Cir. 2012).

The Court first addresses whether, accepting as true the allegations of the amended complaint, defendant's stop of plaintiff's vehicle and his pat-down of plaintiff's person were supported by probable cause or reasonable suspicion. Considering first the vehicle stop, the Court applies the following legal standard:

> The temporary detention of an individual during a traffic stop is subject to limitation under the Fourth Amendment as a "seizure" of the person. The Fourth Amendment requires that an officer making such a stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity. Whether probable cause or reasonable suspicion exists is an objective inquiry; the "actual motivations of the individual officers involved" in the stop "play no role" in the analysis.

*Holeman*, 425 F.3d at 189-90 (citations omitted); *accord Whren*, 517 U.S. at 809-10, 813. The factual allegations in the amended complaint (Dkt. No. 10) regarding the vehicle stop are that plaintiff was stopped at a red light, preaching out his window, when he noticed a SUDPS vehicle in front of him; that, when the SUDPS peace officer in the vehicle (*i.e.*, defendant) heard plaintiff preaching while stopped at the light, he allowed plaintiff to pass him and then followed him, turned on his emergency lights, and, using a loudspeaker, told plaintiff where to stop his car; and that plaintiff complied. At some point thereafter, two SPD officers arrived in response to the 911 calls. According to plaintiff, defendant had no knowledge of the two 911 calls, nor had defendant been dispatched to intercept plaintiff. Rather, plaintiff contends, the sole basis for the stop was defendant's observation of plaintiff's preaching out his window while stopped at a red light.

It is defendant's position that the amended complaint and documents incorporated by reference therein, read together, establish that when he stopped plaintiff, defendant had probable cause or a reasonable suspicion that plaintiff had committed a traffic violation or was otherwise engaged in criminal activity. Defendant relies in part on the transcripts of the two 911 calls, the first of which states that plaintiff was "speeding thru the area - swearing out the window," and the second of which states that plaintiff was "driving in circles around the neighborhood" and "yelling out the window unk[nown] at who." Even accepting defendant's contention that the transcripts of the two 911 calls were incorporated by reference into the amended complaint, this

does not establish that defendant had knowledge of their contents at the time he made the stop; thus, at this point they do not aid defendant in justifying the stop.[2] The amended complaint adequately pleads that defendant objectively lacked probable cause or reasonable suspicion sufficient to justify the vehicle stop.[3]

The Court next addresses whether defendant's frisk of plaintiff was justified. The amended complaint alleges that, when plaintiff pulled over at 1100 Madison Street, defendant directed plaintiff not to exit his vehicle; that plaintiff disobeyed this direction, exited his vehicle, and stood "peacefully" in front of his vehicle; and that defendant then directed plaintiff to place his hands on the front of his vehicle and proceeded to pat him down. It is well established that, even after a lawful traffic stop, the Fourth Amendment protects against warrantless searches of the person. *See Holeman*, 425 F.3d at 191. One exception to this rule arises if, during the course of a lawful investigatory detention, the officer reasonably believes that the detained person might be armed and dangerous. *See id.*; *accord Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his

---

[2] Likewise, even if the SUDPS Detail Call for Service Report or the SPD report are considered to be incorporated by reference into the amended complaint, on their face they do not resolve the question of what knowledge defendant possessed at the time of the stop and frisk. It is true, as defendant points out, that the amended complaint alleges that, after stopping plaintiff's vehicle, defendant told plaintiff that "he had been pulled over based on an alleged complaint about his allegedly swearing out his window while he was driving." This is not sufficient to establish what defendant knew when he stopped plaintiff. Nor is it clear that the SPD's knowledge can properly be attributed to defendant under the "imputed knowledge doctrine." *Zellner v. Summerliln*, 494 F.3d 344, 369 (2d Cir. 2007).

[3] *See generally United States v. Willis*, 2012 WL 3887513, *2-*3 (S.D.Ohio Sept. 7. 2012) (holding that defendant's yelling out a car window, without more, did not give rise to reasonable suspicion warranting a vehicle stop); *cf. United States v. Rodriguez-Morales*, 929 F.2d 780, 784 (1st Cir. 1991) (holding that officers observing defendant screaming out vehicle window at driver of another vehicle as the two proceeded down interstate highway reasonably believed an altercation was taking place; this belief combined with defendant's "arguably reckless driving" justified stop of defendant's vehicle).

-11-

safety or that of others was in danger."). As stated above, whether the stop of the vehicle was reasonable cannot be determined on this motion. Further, the amended complaint sufficiently pleads that defendant lacked a reasonable belief that his safety or that of others was in danger so as to warrant a pat-down. Thus, the amended complaint sufficiently pleads that the pat-down did not comport with the Fourth Amendment.

Finally, the Court considers the effect on this motion of the allegations in the amended complaint that the stop and frisk occurred outside the geographical area of defendant's statutory territorial authority. Plaintiff avers that, when defendant first observed plaintiff stopped at a red light yelling out the window of his vehicle, both parties were within defendant's territory of authority as a SUDPS peace officer, as prescribed by N.Y.C.P.L. § 2.10(77)(b) and the Memo of Understanding between SUDPS and SPD. Defendant, who was driving an officially marked car, allowed plaintiff to pass him, and then began following plaintiff. It is unclear at what point defendant activated his emergency lights. During the pursuit, the parties left defendant's territory of authority, and the stop and frisk took place a short distance outside that territory. Plaintiff contends that once the parties left defendant's territory, defendant no longer had authority to act as a SUDPS peace officer, thus rendering his actions constitutionally unreasonable.

If it is found that the stop and/or frisk was conducted without probable cause or reasonable suspicion, plaintiff has made out a Fourth Amendment claim regardless of defendant's territorial authority. If, however, the stop and frisk was justified, the question becomes whether, under *Whren*, *Moore*, and *Wilson*, defendant's otherwise constitutional actions were rendered unconstitutional by the fact that the pursuit, which began within defendant's state statutory territory, ended one block outside it. "Whether state law authorized the search [is] irrelevant."

-12-

*Moore*, 553 U.S. at 171. A constitutionally reasonable stop or search may, however, become unreasonable if it is "conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests[.]" *Whren*, 517 U.S. at 818. Here, the location of the stop and frisk, without more, does not appear to implicate plaintiff's privacy or physical interests or otherwise to support a claim that the stop and frisk were conducted in an extraordinary manner within the meaning of *Whren*, *Moore*, and *Wilson*. *See generally Pasiewicz v. Lake Co. Forest Preserve Dist.*, 270 F.3d 520, 526-27 (7th Cir. 2001) (holding in section 1983 case that forest preserve officer's arrest of plaintiff outside officer's state statutory territorial authority did not *per se* violate Fourth Amendment); *Engleman v. Deputy Murray*, 546 F.3d 944, 948, n.3 (8th Cir. 2008) (stating that *Moore* abrogated the holding in *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994) that "the question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes."); *United States v. Ryan*, 729 F.Supp.2d 479, 490-91 (D.Mass. 2010) (finding park ranger's arrest of defendant outside his jurisdiction did not violate Fourth Amendment, where ranger had witnessed defendant's traffic violation within his jurisdiction, citing *Moore*). It remains to be seen whether, as the case progresses, plaintiff can establish a viable claim based on the location of the stop and frisk. At this point, the question does not affect the Court's ruling on the motion. Dismissal of the amended complaint for failure to state a Fourth Amendment claim is denied.

## CONCLUSION

It is therefore

ORDERED that the motion (Dkt. No. 11) to dismiss the amended complaint (Dkt. No. 10) is denied; and it is further

-13-

ORDERED that the Rule 16 Conference is reset before Magistrate Andrew T. Baxter to be held on March 18, 2013 at 10:30 a.m. The Conference will be held by telephone and plaintiff's counsel is directed to initiate the call to Magistrate Andrew T. Baxter's chambers at 315-234-8600.

IT IS SO ORDERED.

Date: February 26, 2013
Syracuse, New York

_____
Honorable Norman A. Mordue
U.S. District Judge